UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 4:15 CV 1127 DDN ) |
| MARSHALL MILLER, DINA MILLER, and SIGN IT UP, LLC, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the court is plaintiff's motion for summary judgment on defendants' Count 4 counterclaim of public disclosure of private facts. (ECF No. 80). The parties have consented to the exercise of plenary authority by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). The court heard oral argument on October 13, 2016. For the reasons discussed below, the court grants plaintiff's motion.

### I.   BACKGROUND

Defendants' Count 4 counterclaim alleges defendant (a) "committed the tort of unauthorized disclosure of private facts of the Millers, to wit: their private financial history," and (b) published and made public this information to defendants' neighbors, Marshall Miller's co-workers and employment supervisory personnel. (ECF No. 28 at 11.)

The record and undisputed facts regarding defendants' Count 4 counterclaim indicate the following. Marshall and Dina Miller have insured the property at 152 Southmore Avenue, Hillsboro, Missouri, for approximately thirty years. They have

contracted for and paid premiums for this insurance coverage from American Family Insurance Company. Marshall Miller is employed as a carman for Union Pacific Railroad Company in Desoto, Missouri. Dina Miller works for Signature Health, a doctors' office, in South St. Louis County, and is the sole member and incorporator of defendant Sign It Up, LLC, a sign-making business that she operated out of her basement at 152 Southmore Avenue.

On February 12, 2015, the Millers' home caught fire. The Millers notified American Family and submitted requested information and waivers. American Family and the Millers dispute several facts about Marshall Miller's specific whereabouts during the time of the fire. American Family assigned Shane Knoll to investigate the fire loss, and he interviewed or contacted several individuals about the Millers: Shauna Jolly, Dina Miller's boss; Rhonda Stocker, the Millers' dog groomer; Ameren Union Electric, the Millers' electrical utility provider; Jim Hern, Marshall Miller's employment supervisor; the Desoto Elks Lodge; Tom McDowell, a neighbor; the Union Pacific Railroad Police; Dan Green, Marshall Miller's co-worker; James and Virginia ("Jenny") Skaggs, Dina Miller's parents; Ken and Pat Becker, defendants' neighbors; and Stacy Abney, another of their neighbors. American Family also provided the Jefferson County Sheriff's Department with information about the Millers in response to an official department request.

It is uncontested that American Family's investigator never provided Stacy Abney, Dan Green, Jim Hern, Ken and Pat Becker, or Jenny Skaggs any specific private financial data of the Millers, including credit reports or other financial transactions. The investigator asked each of these individuals about the whereabouts of the Millers and asked whether they had noticed any suspicious activities. In her deposition, Stacey Abney testified the investigator "asked [her] if [she] knew about any financial problems, if they had any." (ECF No. 90, Ex. 4, at depo. p. 19.) When asked whether the investigator shared any of the Millers' personal financial information with her, Stacey Abney said "No," but she also stated that the investigator "told [her] if [she] knew that [the Millers] were in some kind of thing, and [she] would say that they did that he would

2

be able to say something, but until then he couldn't say anything." (*Id.* at depo. p. 20.) In his deposition, Dan Green testified the investigator asked him "if [he] knew Mr. Miller's financial standings, if [he] knew if they were behind on this or if [Mr. Miller] said anything about ever hurting for money or something like that." (ECF No. 90, Ex. 6, at depo. p. 29.)

## II. Legal Standard

Summary judgment is appropriate "if there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party." *Shrable v. Eaton Corp.*, 695 F.3d 768, 770 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The burden shifts to the non-moving party to demonstrate that disputes of fact do exist only after the movant has made its showing. *Id.* However, after adequate time for discovery has taken place and upon motion, the court may also enter judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case when that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 319. "Evidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006).

## III. Discussion

Plaintiff moves the court for summary judgment in its favor on defendants' Count 4 counterclaim of public disclosure of private facts. Under Missouri law, the essential elements of this common law cause of action are: "(1) publication or 'publicity,' (2) absent any waiver or privilege, (3) of private matters in which the public has no legitimate concern, (4) so as to bring shame or humiliation to a person of ordinary sensibilities." *Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 498-99 (Mo. Ct. App. 1990); *accord*, *Chasnoff v. Mokwa*, 466 S.W.3d 571, 579 (Mo. Ct. App. 2015).

Plaintiff argues defendants have failed to establish the first element of publication. The court agrees. The Supreme Court of Missouri has held that "publication" means "communication to the public in general or to [a] large number of persons, as distinguished from one individual or a few." *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892, 898 (Mo. 1959); *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 610 (Mo. Ct. App. 1998). It can also mean communications that "have a likelihood of becoming public knowledge." *Balke v. Ream*, 33 S.W.3d 589, 594 (Mo. Ct. App. 2000).

Defendants allege in their counterclaim only that their private financial history was published by plaintiff to defendants' neighbors, co-workers, and employers. Defendants identified six individuals to whom American Family representatives assertedly disclosed their financial history: Stacy Abney (defendants' neighbor), Dan Green (Marshall Miller's co-worker), Jim Hern (Marshall Miller's supervisor), Ken and Pat Becker (defendants' neighbors), Virginia Skaggs (Dina Marshall's mother), and the Jefferson County Sheriff's Department.[1] The six named individuals each testified that they were never given any private financial data of the Millers, including credit reports or other financial transactions. Defendants do not dispute this. Instead, defendants argue that the questions of American Family's agent "implied" that the Millers were arson suspects or had financial problems.

Defendants' argument, that the questioning by American Family's investigator "implied" that defendants were suspected of arson, is a privacy claim other than that alleged in their Count 4 counterclaim. Defendants also argue that several individuals were contacted by American Family's investigator who questioned them about the Millers' whereabouts: Shauna Jolly, Dina Miller's supervisor; Rhonda Stocker, the

---

[1] Plaintiff provided the Sheriff's Department with Defendants' private information, but it did so in response to the Department's request and pursuant to Mo. Rev. Stat. § 320.081, which requires insurance companies to provide information to for state arson investigations. This does not constitute a public disclosure of private facts, as arson is a matter in which the public has legitimate concern. *See, e.g., Buller v. Pulitzer Pub. Co.*, 684 S.W.2d 473, 482 (Mo. Ct. App. 1984) (holding that when the activities of the police, such as making an arrest, are involved, the matter is within the public interest).

Millers' dog groomer; Tom McDowell, the Millers' neighbor; the Desoto Elks Lodge; and the Union Pacific Railroad Police. These allegations are also related to the claim that defendant implied that Marshall Miller was suspected of committing arson, rather than the claim that the investigator disclosed the Millers' financial situation.[2]

Defendants also claimed at oral argument that the investigator's questioning of witnesses "implied" that the Millers were experiencing financial difficulties. However, after extensive discovery, defendants have produced, at most, two individuals who have testified that American Family's investigator asked them pointed questions that might imply that the Millers were experiencing financial difficulties: Stacy Abney and Dan Green. This is insufficient, as a matter of Missouri law, to constitute publication. *St. Anthony's Med. Ctr.*, 974 S.W.2d at 610 ("[P]ublication means communication to the public in general or to a large number of persons, as distinguished from one individual or a few.") (citations omitted).

## IV. ORDER

For these reasons,

**IT IS HEREBY ORDERED** that the motion of plaintiff for summary judgment on defendants' Count 4 counterclaim of public disclosure of financial information (ECF No. 80) is **SUSTAINED**. Defendants' Count 4 claim is dismissed with prejudice.

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed and filed on October 18, 2016.

---

[2] The investigator's discussion with Ameren Union Electric concerned the Miller's financial situation, but Ameren was already aware of its own account with the Millers, and its representative simply confirmed defendants' financial account information with the investigator.